UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM E. BURGES and ROSE M. BURGES, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BANCORPSOUTH, INC., JAMES D. ROLLINS III, and WILLIAM L. PRATER,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT**

Plaintiffs William E. Burges and Rose M. Burges ("Plaintiffs"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, for their complaint against defendants, alleges the following based upon personal knowledge as to themselves and their own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through their attorneys, which included, among other things, a review of the defendants' public documents, conference calls and announcements made by defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding BancorpSouth Inc., ("BancorpSouth" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants (defined below) who purchased or otherwise acquired BancorpSouth securities between January 8, 2014 and July 21, 2014, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. BancorpSouth, Inc. operates as a financial holding company for BancorpSouth Bank that provides commercial banking and financial services to individuals and small-to-medium size businesses. It offers various deposit products, including interest bearing and noninterest bearing demand deposits, and saving and time deposits. The Company also provides various commercial loans comprising term loans, lines of credit, equipment and receivable financing, and agricultural loans, as well as a range of short-to-medium term secured and unsecured commercial loans to businesses for working capital, business expansion, and the purchase of equipment and machinery; and construction loans to real estate developers for the acquisition, development, and construction of residential subdivisions. The Company offers its services through 290 offices in Mississippi, Tennessee, Alabama, Arkansas, Texas, Louisiana, Florida, Missouri, and Illinois.

3. On January 8, 2014, the Company announced the signing of a definitive merger agreement with Ouachita Bancshares Corp., parent company of Ouachita Independent Bank (collectively referred to as "OIB"), headquartered in Monroe, Louisiana, pursuant to which Ouachita Bancshares Corp. would be merged with and into the Company. Under the terms of the

2

Case 3:14-cv-01564   Document 1   Filed 07/31/14   Page 2 of 19 PageID #: 2

definitive agreement, the Company announced that it would issue a maximum of 3,675,000 shares of the Company's common stock plus $22.9 million in cash for all outstanding shares of Ouachita Bancshares Corp.'s capital stock. At the time, BancorpSouth announced that it expected the transaction to close during the second quarter of 2014.

4. On January 22, 2014, the Company also announced the signing of a definitive merger agreement with Central Community Corporation, headquartered in Temple, Texas, pursuant to which Central Community Corporation would be merged with and into the Company. Under the terms of the definitive agreement, the Company announced that it would issue approximately 7,250,000 shares of the Company's common stock plus $28.5 million in cash for all outstanding shares of Central Community Corporation's capital stock. At the time, BancorpSouth announced that it expected the transaction to close during the second quarter of 2014.

5. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's procedures, systems and processes related to certain of its compliance programs. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) BancorpSouth's operations and credit practices violated the Bank Secrecy Act ("BSA") and anti-money-laundering programs; (2) the Company's fair lending practices were not in compliance with the regulations promulgated by the Consumer Financial Protection Bureau; and as a result of the above, (3) BancorpSouth's financial statements were materially false and misleading at all relevant times; and (4) regulatory scrutiny into the Company's lending practices could severely jeopardize the Company's ability to close the announced mergers with OIB and Central Community Corporation.

6. On July 21, 2014, after the market closed, BancorpSouth issued a press release announcing financial results for the second quarter ended June 30, 2014. The press release also disclosed that the Company would need "additional time" to obtain the required regulatory approval for the two announced mergers, requiring "each of Ouachita Bancshares Corp. and Central Community Corporation [to] extend[] their respective merger agreements to June 30, 2015." The July 21, 2014 press release also disclosed the Company's compliance shortcomings, stating, in relevant part:

> The Company has learned that federal bank regulators have identified concerns during the course of routine supervisory activities regarding the Company's procedures, systems and processes related to certain of its compliance programs, including its Bank Secrecy Act and anti-money-laundering programs. In addition, the Consumer Financial Protection Bureau currently is conducting a review of the Company's fair lending practices.
>
> Rollins continued, "While disappointed in the delay in being able to close these transactions, we are working diligently to resolve the compliance concerns that have been identified and to make the necessary improvements in our compliance programs. We are pleased with the confidence that our merger partners have demonstrated through the extension of the merger agreements."

7. As a result of this news, shares of BancorpSouth fell $1.90, or over 8%, on extremely heavy volume, to close at $21.51 on July 22, 2014.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

9. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

4

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as a significant portion of the Defendants' actions, and the subsequent damages, took place within this District.

12. In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

13. Plaintiffs, as set forth in the attached Certification, acquired BancorpSouth securities at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

14. BancorpSouth, Inc. is the holding company for BancorpSouth Bank. The Bank attracts deposits from the general public and originates a variety of loans. BancorpSouth operates in Mississippi, Alabama, Tennessee, Arkansas, Texas, and Louisiana. The Company also provides investment services, consumer finance, credit life insurance, and insurance agency services. Bancorp's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "BXS."

15. Defendant James D. Rollins III ("Rollins") has served at all relevant times as the Company's Chief Executive Officer and Chairman.

16. Defendant William L. Prater ("Prater") has served at all relevant times as the Company's Chief Financial Officer.

17. The defendants referenced above in ¶¶ 15 and 16 are sometimes referred to herein as the "Individual Defendants."

18. BancorpSouth and the Individual Defendants are sometimes collectively referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

19. BancorpSouth conducts a general commercial banking, trust and insurance business through 290 offices in Mississippi, Tennessee, Alabama, Arkansas, Texas, Louisiana, Florida, Missouri and Illinois. The Company has grown through the acquisition of other banks and insurance agencies and through the opening of new branches and offices.

20. BancorpSouth and its subsidiaries provide a range of financial services to individuals and small-to-medium size businesses. The Company operates investment services and insurance agency subsidiaries which engage in investment brokerage services and sales of other insurance products. The bank's trust department offers a variety of services including personal trust and estate services, certain employee benefit accounts and plans, including individual retirement accounts, and limited corporate trust functions. All of the Company's assets are located in the United States and all of its revenues generated from external customers originate within the United States.

### Materially False and Misleading Statements Issued During the Class Period

21. On January 8, 2014, the Company issued a press release announcing the signing of a definitive merger agreement with Ouachita Bancshares Corp. and its wholly owned subsidiary, Ouachita Independent Bank, whereby Ouachita Bancshares Corp. will be merged with and into BancorpSouth. According to the press release, under the terms of the definitive agreement, BancorpSouth will issue a maximum of 3,675,000 shares of BancorpSouth common

stock plus $22.875 million in cash for all outstanding shares of Ouachita Bancshares Corp. capital stock, subject to certain conditions and potential adjustments.

22. The January 8, 2014 press release also stated that:

> The merger has been unanimously approved by the Boards of Directors of both companies and is expected to close during the second quarter of 2014. The transaction is subject to certain conditions, including the approval by OIB's shareholders and customary regulatory approvals. Operational integration is anticipated to begin during the second quarter of 2014.

23. On January 22, 2014, the Company issued a press release announcing the signing of a definitive merger agreement with Central Community Corporation, headquartered in Temple, Texas, whereby Central Community Corporation will be merged with and into BancorpSouth. According to the press release, under the terms of the definitive agreement, BancorpSouth will issue approximately 7,250,000 shares of BancorpSouth common stock plus $28.5 million in cash for all outstanding shares of Central Community Corporation capital stock, subject to certain conditions and potential adjustments.

24. The January 22, 2014 press release also stated that:

> The merger has been unanimously approved by the Boards of Directors of both companies and is expected to close during the second quarter of 2014. The transaction is subject to certain conditions, including the approval by Central Community Corporation's shareholders and customary regulatory approvals. Operational integration is anticipated to begin during the third quarter of 2014.

25. Also on January 22, 2014, the Company issued a press release announcing its financial and operating results for the fourth quarter and year ending December 31, 2013. The Company reported net income of $27.7 million, or $0.29 per diluted share, for the fourth quarter of 2013 compared with net income of $17.0 million, or $0.18 per diluted share, for the fourth quarter of 2012 and net income of $24.9 million, or $0.26 per diluted share, for the third quarter of 2013. Additionally, the Company reported total net income of $94.1 million, or $0.99 per

diluted share, for the year ended December 31, 2013 compared to $84.3 million, or $0.90 per diluted share, for the year ended December 31, 2012.

26. On February 25, 2014, the Company filed an annual report on Form 10-K with the SEC, which was signed by defendants Rollins and Prater, and reiterated the Company's previously announced quarterly and annual financial results and financial position. In addition, the 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by defendants Rollins and Prater, stating that the financial information contained in the Form 10-K was accurate and disclosed any material changes to the Company's internal control over financial reporting.

27. With respect to the two pending mergers, the 2013 Form 10-K specifically noted the following:

> The Company has evaluated any additional subsequent events through the date of this filing. Management does not believe there are any additional material subsequent events which would require further disclosure.

28. On April 21, 2014, the Company issued a press release announcing its financial and operating results for the first quarter ending March 31, 2014. The Company reported net income of $28.4 million, or $0.30 per diluted share, for the first quarter of 2014 compared with net income of $20.8 million, or $0.22 per diluted share, for the first quarter of 2013 and net income of $27.7 million, or $0.29 per diluted share, for the fourth quarter of 2013.

29. On May 6, 2014, the Company filed a quarterly report on Form 10-Q with the SEC, which was signed by defendants Rollins and Prater, and reiterated the Company's previously announced quarterly financial results and financial position. In addition, the 10-Q contained signed SOX certifications by defendants Rollins and Prater, stating that the financial

information contained in the Form 10-Q was accurate and disclosed any material changes to the Company's internal control over financial reporting.

30. The statements referenced in ¶¶ 21–29 above were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts regarding the Company's procedures, systems and processes related to its lending and compliance programs. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) BancorpSouth's operations and credit practices violated the Bank Secrecy Act ("BSA") and governmental anti-money-laundering programs; (2) the Company's fair lending practices were not in compliance with the regulations promulgated by the Consumer Financial Protection Bureau; and as a result of the above, (3) BancorpSouth's financial statements were materially false and misleading at all relevant times; and (4) regulatory scrutiny into the Company's lending practices could severely jeopardize the Company's ability to close the announced mergers with OIB and Central Community Corporation.

## **The Truth Emerges**

31. On July 21, 2014, the Company issued a press release announcing its financial and operating results for the second quarter ending June 30, 2014. With regard to the pending mergers with Ouachita Bancshares Corp. and Central Community Corporation, the July 21, 2014 press release stated the following:

> The Company and each of Ouachita Bancshares Corp. and Central Community Corporation have determined additional time will be required to obtain regulatory approvals and to satisfy closing conditions necessary to complete their respective mergers. The Company and each of Ouachita Bancshares Corp. and Central Community Corporation have extended their respective merger agreements to June 30, 2015.
>
> "We continue to believe our proposed mergers with Ouachita Bancshares Corp. and Central Community Corporation are in the best interest of our shareholders,

9

Case 3:14-cv-01564   Document 1   Filed 07/31/14   Page 9 of 19 PageID #: 9

customers and communities," stated Dan Rollins, BancorpSouth Chairman and Chief Executive Officer.

As previously announced, the mergers have been unanimously approved by the boards of directors of all three companies, and by the shareholders of Ouachita Bancshares Corp. and Central Community Corporation. The transactions remain subject to required regulatory approvals and the satisfaction of other closing conditions.

***The Company has learned that federal bank regulators have identified concerns during the course of routine supervisory activities regarding the Company's procedures, systems and processes related to certain of its compliance programs, including its Bank Secrecy Act and anti-money-laundering programs. In addition, the Consumer Financial Protection Bureau currently is conducting a review of the Company's fair lending practices***.

Rollins continued, "While disappointed in the delay in being able to close these transactions, we are working diligently to resolve the compliance concerns that have been identified and to make the necessary improvements in our compliance programs. We are pleased with the confidence that our merger partners have demonstrated through the extension of the merger agreements."

32. On this news, shares of BancorpSouth fell $1.90, or over 8%, on extremely heavy volume, to close at $21.51 on July 22, 2014.

33. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiffs and other Class members have suffered significant losses and damages.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

34. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired BancorpSouth securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

10

35. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, BancorpSouth securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by BancorpSouth or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37. Plaintiffs will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

38. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Bancorp;

- whether the Individual Defendants caused BancorpSouth to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

11

- whether the prices of BancorpSouth securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

40. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- BancorpSouth securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NYSE and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiffs and members of the Class purchased, acquired and/or sold BancorpSouth securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

41. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

42. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violation of Section 10(b) of The Exchange Act and Rule 10b-5
### Against All Defendants

43. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

44. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

45. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of BancorpSouth securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire BancorpSouth securities and options at artificially inflated prices. In

furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

46. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for BancorpSouth securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Bancorp's finances and business prospects.

47. By virtue of their positions at Bancorp, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

48. Defendants were personally motivated to make false statements and omit material information necessary to make the statements not misleading in order to personally benefit from the sale of BancorpSouth securities from their personal portfolios.

49. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Bancorp, the Individual Defendants had knowledge of the details of Bancorp's internal affairs.

50. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Bancorp. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Bancorp's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of BancorpSouth securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Bancorp's business and financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired BancorpSouth securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

51. During the Class Period, BancorpSouth securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of BancorpSouth securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or

otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of BancorpSouth securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of BancorpSouth securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff sand Class members.

52. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violation of Section 20(a) of The Exchange Act Against The Individual Defendants

54. Plaintiffs repeat and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

55. During the Class Period, the Individual Defendants participated in the operation and management of Bancorp, and conducted and participated, directly and indirectly, in the conduct of Bancorp's business affairs. Because of their senior positions, they knew the adverse non-public information about Bancorp's misstatement of income and expenses and false financial statements.

16

56. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Bancorp's financial condition and results of operations, and to correct promptly any public statements issued by BancorpSouth which had become materially false or misleading.

57. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which BancorpSouth disseminated in the marketplace during the Class Period concerning Bancorp's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause BancorpSouth to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of BancorpSouth within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of BancorpSouth securities.

58. Each of the Individual Defendants, therefore, acted as a controlling person of BancorpSouth. By reason of their senior management positions and/or being directors of BancorpSouth, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, BancorpSouth to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of BancorpSouth and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

59. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Bancorp.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B. Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.


Dated: July 31, 2014

Respectfully submitted,

**BRAMLETT LAW OFFICES**
BY:

s/*Paul Kent Bramlett #7387*
PAUL KENT BRAMLETT #7387
ROBERT PRESTON BRAMLETT #25895
P. O. Box 150734
Nashville, TN 37215
Telephone: 615.248.2828
Facsimile: 866.816.4116
E-mails: PKNASHLAW@aol.com
Robert@BramlettLawOffices.com

**POMERANTZ, LLP**
Jeremy A. Lieberman
Francis P. McConville
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email: jalieberman@pomlaw.com
       fmcconville@pomlaw.com


**POMERANTZ LLP**
Patrick V. Dahlstrom
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email: pdahlstrom@pomlaw.com


*Attorneys for Plaintiffs*