IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

WILLIAM E. BURGES, et al.  )
                            )
v.                          ) NO. 3-14-1564
                            ) JUDGE CAMPBELL
BANCORPSOUTH, INC., et al.  )

MEMORANDUM

Pending before the Court is Defendants' Motion to Dismiss Lead Plaintiff's Complaint for Violations of the Federal Securities Laws (Docket No. 52). For the reasons stated herein, Defendant's Motion is GRANTED in part and DENIED in part.

FACTS

This federal securities class action is brought on behalf of all persons who purchased or otherwise acquired the common stock of BancorpSouth, Inc. ("the Bank")[1] from January 8, 2014, through July 21, 2014. The Amended Complaint (Docket No. 39) seeks to recover damages caused by Defendants' alleged violations of the Securities Exchange Act and Rule 10b-5 promulgated thereunder.

Plaintiffs allege that Defendants made materially false and misleading statements and omissions regarding the Bank's compliance with federal laws and concerning the Bank's two pending acquisitions/mergers. Defendants contend that the Complaint should be dismissed because Plaintiffs have alleged no actionable misstatements, have failed to plead facts giving rise to a strong inference of scienter, and have failed adequately to allege loss causation.

---

[1] BancorpSouth, Inc. is a financial holding company which owns BancorpSouth Bank as a wholly-owned subsidiary.

At the heart of this dispute is the Bank's alleged non-compliance with federal banking laws and regulations concerning the Bank Secrecy Act ("BSA") and Anti-Money Laundering ("AML") laws. Plaintiffs allege that Defendants knew they were not in compliance (were, in fact, far out of compliance) and yet they affirmatively stated that they were in compliance with all banking laws and regulations, that they expected the two planned mergers to close in the second quarter of 2014, and that they expected to receive regulatory approval for those mergers.

## MOTIONS TO DISMISS

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 1950. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

Because Section 10(b) claims sound in fraud, the pleading strictures of Fed. R. Civ. P. 9(b) apply. Thus, the complaint must specify the statements (or omissions) that the plaintiffs contend were fraudulent, identify the speakers, state where and when the statements were made, and explain why the statements (or omissions) were fraudulent. 15 U.S.C. § 78u-4(b); *Indiana State District*

2

*Council of Laborers and HOD Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009).

ANALYSIS

Federal securities law makes it unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, to use or employ, in connection with the purchase or sale of any security, any manipulative or deceptive device or contrivance in contravention of federal law. 15 U.S.C. § 78j(2)(b).

Rule 10b-5, promulgated by the Securities and Exchange Commission, specifies the prohibited acts as follows: (1) employing any device, scheme or artifice to defraud; (2) making any untrue statement of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (3) engaging in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person. 17 C.F.R. § 420.10b-5.

In order to state a claim for securities fraud, Plaintiffs must demonstrate (1) a material misrepresentation or omission by Defendants; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation. *In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 469 (6th Cir. 2014).

Plaintiffs contend that Defendants made materially false and misleading statements concerning the Bank's compliance with legal and regulatory requirements and the timing of the anticipated mergers with Ouachita (a Louisiana bank) and Central Community (the parent company of First State Bank of Central Texas). More specifically, Plaintiffs allege that, beginning in January

3

of 2014, Defendants assured investors that the Bank was in compliance with BSA and AML requirements when Defendants knew the Bank was not in compliance and was, after February 3, 2014, under review by the FDIC.[2] Plaintiffs also claim that Defendants failed to disclose the FDIC review and the effect it would have on the Bank's anticipated mergers. Plaintiffs assert false and misleading statements and omissions in the Bank's press releases, Form 8-Ks, conference calls, registration statements, Form 10-Ks and proxy statements from January through July of 2014.

<u>Material Misrepresentation or Omission</u>

Successfully pleading an actionable material misrepresentation or omission requires a plaintiff to allege facts demonstrating two things: (1) that a defendant made a statement or omission that was false or misleading; and (2) that the statement or omission concerned a material fact. *In re Omnicare*, 769 F.3d at 470. Materiality can be established by proof of a substantial likelihood that the disclosure of the omitted fact would have been viewed by a reasonable investor as having significantly altered the total mix of information made available. *Indiana*, 583 F.3d at 943.[3]

When an alleged misrepresentation concerns "hard information" - typically historical information or other factual information that is objectively verifiable - it is actionable if a plaintiff pleads facts showing that the statement concerned a material fact and that it was objectively false

---

[2] The Amended Complaint alleges that because financial institutions are given advance notice of upcoming examinations, Defendants were aware of the impending FDIC review before the review began on February 3, 2014.

[3] It does not appear that Defendants contend these alleged statements and omissions were not "material." In any event, whether or not a statement is "material" turns on a fact-intensive test and, therefore, the Court may not dismiss a complaint on the ground that the alleged statements or omissions were not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance. *In re Sanofi Securities Litigation*, 2015 WL 365702 at * 12 (S.D. N.Y. Jan. 28, 2015). These alleged statements and omissions do not fall in that category.

4

or misleading. *Omnicare*, 769 F.3d at 470. When an alleged misrepresentation concerns "soft information" - predictions and matters of opinion - a plaintiff must additionally plead facts showing that the statement was made with actual knowledge of its falsity. *Id*.

For the alleged misrepresentations in Plaintiffs' Complaint (Docket No. 39), Plaintiffs have alleged specific statements or omissions, the time and place of each communication or omission, and why they are allegedly false or misleading. For purposes of this Motion to Dismiss, these allegations are sufficiently particular under Fed. R. Civ. P. 9(b).

Defendants argue, however, that the representations about the expected time-line for the mergers and the required regulatory approvals were not false or misleading because Defendants never suggested that the regulatory approvals were assured or that the time-line was guaranteed. Defendants claim their statements were forward-looking and included cautionary language such as use of the words "expect" and "anticipate." Defendants insist that they warned investors that the hoped-for regulatory approvals and mergers were not guaranteed.

Federal securities law includes a "safe harbor" which excuses liability for statements containing projections of revenues, income, earnings or other financial items; statements of the plans and objectives of management for future operations; and statements of future economic performance. 15 U.S.C. §78u-5(i); *Indiana*, 583 F.3d at 943.

Specifically, a person shall not be liable for any forward-looking statement (1) if the statement is identified as a forward-looking statement and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement, or (2) if the forward-looking statement is immaterial, or (3) if the plaintiff fails to prove that the forward-looking statement was made by or with the approval

5

of an executive officer of the business entity and was made or approved by such officer with actual knowledge by that officer that the statement was false or misleading. 15 U.S.C. § 78u-5(c).

The Court finds that certain of the allegedly misleading statements in this case are forward-looking statements. The statements in the press releases, registration statements, agreements, Form 10-Ks, proxy statements and/or oral representations which announced that the Bank expected the mergers to close in the second quarter of 2014 are forward-looking statements and are protected by the Safe Harbor provisions. Particularly because these statements are couched in cautionary terms such as "expect" or "anticipate," the statements are protected.

Moreover, both the January 8, 2014 and the January 22, 2014 press releases concerning the two mergers include two complete paragraphs headed "Forward-Looking Statements," which identify and specifically warn the readers not to place undue reliance on these statements and set forth a variety of factors which could change the anticipated results. Docket Nos. 57-2 and 57-4.

The statements which announced that the Bank expected to receive the appropriate regulatory approvals also reflect anticipated and expected actions, not guarantees, and they are forward-looking statements. For these reasons, the Court finds that the forward-looking statements concerning what Defendants anticipated and/or expected to happen concerning the two mergers are protected by the Safe Harbor and are not false or misleading.

Plaintiffs allege more than forward-looking statements about the timing of the regulatory approval and the mergers, however. Plaintiffs also allege that Defendants affirmatively represented that the Bank was in compliance with banking laws when they knew it was not. For example, Plaintiffs allege that, as part of the merger agreement with Ouachita, which was attached to the

6

Bank's publicly-filed February 12, 2014 Registration Statement, and in similar documents with regard to the Central Community merger, the Bank represented that:

> BancorpSouth and BancorpSouth Bank have complied in all material respects with and are not in material default or violation under any applicable law, statute, order, rule, regulation, policy and/or guideline of any Governmental Body relating to BancorpSouth or BancorpSouth Bank, including all Banking Laws.
>
> . . .
>
> Each of BancorpSouth and BancorpSouth Bank has timely and properly filed and maintained in all material respects all requisite Currency Transaction Reports and Suspicious Activity Reports and has systems customarily used by financial institutions of a similar size to BancorpSouth Bank that are designed to properly monitor transaction activity (including wire transfers).
>
> . . .
>
> BankcorpSouth has no Knowledge of any fact or circumstance relating to BancorpSouth or any of its Subsidiaries that would materially impede or delay receipt of any required regulatory approval of the Merger or the other transactions contemplated by this Agreement, including the Bank Merger, nor does BancorpSouth have any reason to believe that it will not be able to obtain all requisite regulatory and other approvals or consents which it is required to obtain in order to consummate the Merger and the Bank Merger.

Complaint, ¶ 127.

Plaintiffs allege that Defendants continued to falsely represent that the Bank was in compliance with all banking laws, had filed all relevant reports, and had no knowledge of any fact or circumstance which would impede or delay regulatory approvals when Defendants knew all along that the Bank was not in compliance and, in fact, after February 3, 2014, knew that the Bank was the subject of a Target Review by the FDIC for BSA and/or AML compliance.

Defendants affirmatively stated that they were in compliance with all banking laws, had timely filed all the proper and required reports concerning currency transactions and suspicious activity, and had no knowledge of any fact or circumstance relating to BancorpSouth or any of its subsidiaries that would materially impede or delay receipt of any required regulatory approval of the proposed merger. These are affirmative statements about present or historical facts, not forward-

7

looking statements, and Plaintiffs sufficiently allege that Defendants knew these statements were false and misleading, given the Bank's non-compliance and the existing FDIC review.

Although federal securities law does not create an affirmative duty to disclose any and all material information, an omission is actionable when disclosure of information is necessary to make the statements made, in light of the circumstances under which they were made, not misleading. *Sanofi,* 2015 WL 365702 at * 11; 17 C.F.R. § 240.10b-5(b). If a company chooses to volunteer information, its disclosure must be full and fair, and courts may conclude that the company was obliged to disclose additional material facts to the extent that the volunteered disclosure was misleading. *City of Monroe Employees Retirement System v. Bridgestone Corp.*, 399 F.3d 651, 670 (6th Cir. 2005). The securities laws require an actor to provide complete and non-misleading information with respect to the subjects on which he undertakes to speak. *Id*. As stated in Rule 10(b)-5, it is unlawful for a person to omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading. *Id*.

Generally, companies have no duty to opine about the legality of their own actions. *Indiana*, 583 F.3d at 945. If the complaint adequately alleges that the defendants knew the statements were untruthful, however, liability can attach to a company's general assertion of legal compliance. *Id*. Here, unlike the plaintiffs in *Indiana*, Plaintiffs have set forth sufficient factual allegations to support their claim that Defendants knew these statements to be untrue when they were made. Plaintiffs have pled facts, sufficient at this pleading stage of the litigation, which demonstrate that Defendants were not in compliance with federal banking laws at the time these representations were made.

For example, Plaintiffs allege that the BSA and AML regulations require, at a minimum, that the Bank have (1) a system of internal controls to ensure ongoing compliance; (2) independent

testing of compliance; (3) a designated compliance officer; and (4) training for appropriate personnel. Plaintiffs contend that the Bank was not in compliance with any of these requirements. Plaintiffs also have alleged numerous facts showing that compliance with the BSA and AML laws was a key issue and well-known focus in the banking industry since at least 2012. In addition, Plaintiff asserts that the FDIC initiated a Target Review into the Bank's compliance program on February 3, 2014, before many of the alleged misrepresentations.

Because Defendants chose to speak on the issue of their compliance with banking laws and regulations, a reasonable juror could conclude that those statements, without some qualification or accompanying disclosure of their non-compliance and/or the pending FDIC review, were misrepresentations because they were, at a minimum, incomplete.

It may be the case that at the summary judgment stage of this dispute, Defendants can show otherwise; but at this stage in the lawsuit, construing the Complaint in the light most favorable to Plaintiffs, the Court finds that Defendants' representations concerning their compliance with banking laws could be deemed material misrepresentations. *See City of Monroe*, 399 F.3d at 672.

With the exception of the forward-looking statements concerning the timing of the mergers and regulatory approvals, Plaintiffs have sufficiently alleged material misrepresentations and/or omissions to survive the Motion to Dismiss.

Scienter

To show scienter, Plaintiffs must state with particularity facts giving rise to a strong inference that the Defendants acted with the required state of mind. *Frank v. Dana Corp.,* 646 F.3d 954, 958 (6th Cir. 2011). Scienter may take the form of knowing and deliberate intent to manipulate,

9

deceive, or defraud, and recklessness. *Id*. at 959.[4] "Recklessness" is defined as highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable person would have known of it. Recklessness is not negligence, but more akin to conscious disregard. *Id.*

The three-part test set forth by the Supreme Court for lower courts to apply in assessing the sufficiency of a plaintiff's scienter allegations is: (1) the court must accept all factual allegations in the complaint as true; (2) the court must consider the complaint in its entirety and decide whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard; and (3) assuming plaintiff's allegations create a powerful or cogent inference of scienter, the court must compare this inference with other competing possibilities, allowing the complaint to go forward only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged. *Omnicare,* 869 F.3d at 473.

Thus, accepting the allegations of the Complaint as true and viewing them collectively, the Court must decide whether the facts alleged give rise to a strong inference of scienter and, if so, whether that inference is at least as compelling as any opposing inference. To qualify as "strong," an inference of scienter must be more than merely plausible or reasonable; it must be cogent and at least as compelling as any opposing inference of non-fraudulent conduct. *Ashland, Inc. v. Oppenheimer & Co., Inc.*, 648 F.3d 461, 469 (6th Cir. 2011).

---

[4] The Sixth Circuit has held that if the alleged misrepresentation is "soft" information, plaintiffs must plead facts showing that the defendants knowingly misrepresented or omitted facts to deceive, manipulate or defraud the public. *Omnicare*, 769 F.3d at 473. The alleged misrepresentations and omissions still at issue here, as explained above, deal with present and historical facts and are "hard" information.

The facts alleged here include, as noted above, allegations that compliance with BSA and AML regulations was required, well-known and well-enforced during the time just before and the time of the alleged misrepresentations and/or omissions. Plaintiffs allege that Defendants knew or should have known that their compliance was important and necessary. Plaintiffs also allege that Defendants knew or should have known that they were not in compliance with these regulations and laws, particularly in light of the ongoing FDIC Target Review of the Bank's BSA and AML compliance. Plaintiffs contend that Defendants' representations were, at best, reckless.

The Court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 326 (2007). The Court finds that Plaintiffs' factual allegations, when considered together, give rise to a strong inference that Defendants acted with scienter with regard to their representations and omissions about compliance with the BSA and AML laws and regulations.

Plaintiffs have set forth factual allegations which, if true, show that Defendants knew or should have known or, at a minimum were reckless in ignoring the fact that, they were not in compliance with these banking laws. For example, Plaintiffs contend that Defendants knew that for the mergers to be approved, the Bank would have to be in compliance with applicable state and federal laws and regulations and that regulators would review the Bank's compliance therewith. Plaintiffs allege that Defendants knew (or at a minimum were reckless in not knowing) that the Bank was required to develop and maintain a BSA/AML compliance program which provided for the minimum "4 Pillars" of BSA compliance. Plaintiffs assert that Defendants were, at a minimum, reckless if they were unaware of these requirements and, especially in light of the FDIC Target Review, if they were unaware that they were not in compliance.

11

For these reasons, the Court finds that Plaintiffs have sufficiently pled scienter with regard to the Defendants' affirmative statements concerning compliance.

Loss Causation

Defendants contend that Plaintiffs have not sufficiently alleged loss causation. In any private action under the federal securities law, the plaintiff has the burden of proving that the act or omission of the defendant alleged to violate the securities law caused the loss for which the plaintiff seeks to recover damages. 15 U.S.C. § 78u-4(b)(4). Loss causation requires a causal connection between the material misrepresentation and the loss. Price inflation alone is insufficient; rather, a plaintiff must show that an economic loss occurred after the truth behind the misrepresentation or omission became known to the market. *Indiana*, 583 F.3d at 944.

The Amended Complaint alleges that Defendants' false and misleading statements and omissions caused the Bank stock to trade at inflated prices and then, after July 21, 2014, when Defendants disclosed for the first time that bank regulators had "concerns" and additional time would be required to obtain regulatory approvals, the Bank's stock price dropped nearly 10% in two days.[5]

Defendants argue that the market's reaction to the July 21, 2014 announcement was a reaction simply to the delay in the anticipated mergers, an occurrence about which the public had been warned numerous times. Defendants claim, therefore, that the drop in stock price was not a result of any alleged misrepresentations or omissions, but rather a result of a delay for regulators' concerns, of which the public had been warned all along. Defendants point out that on August 6,

---

[5] Plaintiffs also aver that during the same period when the Bank stock price fell nearly 10%, the stock of the Bank's selected industry peer group fell less than 1%.

2014, when Defendants disclosed for the first time that they were entering into a Consent Decree with the FDIC and that the merger applications would not be considered until the Consent Decree's terms were met, the Bank's stock price did not change materially.

The Court finds that Plaintiffs have adequately pled loss causation by showing that the stock price dropped when the information concerning the regulatory concerns and review was first disclosed. The Complaint sufficiently alleges that the information in the July 21, 2014 announcement was enough to affect the market and stock price in a negative way.

Section 20(a) Individual Liability

Because of the above-stated holdings, the Amended Complaint's Section 20(a) allegations with regard to forward-looking statements (as identified herein) are dismissed and the Amended Complaint's Section 20(a) allegations with regard to the affirmative statements of compliance (as identified herein) are sufficient to survive this motion to dismiss.

CONCLUSION

For these reasons, Defendants' Motion to Dismiss Lead Plaintiff's Complaint for Violations of the Federal Securities Laws (Docket No. 52) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE