# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **WILLIAM E. BURGES, et al.,** | ) | |
| | ) | |
| **Plaintiffs** | ) | |
| **v.** | ) | **NO. 3:14-cv-1564** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| **BANCORPSOUTH, INC., et al.,** | ) | |
| | ) | |
| **Defendants** | ) | |

## MEMORANDUM OPINION

Pending before the Court, for the second time, is a Motion to Certify the Class (Doc. No. 97), filed by Palm Beach Gardens Firefighters Pension Fund ("the Fund").[1] On April 28, 2016, this Court entered an Order granting the Fund's Motion to Certify the Class (Doc. Nos. 157-58.) The Sixth Circuit Court of Appeals vacated that Order and remanded the case to this Court for further proceedings. (Doc. No. 178.)

The parties have agreed, since that remand, that all discovery necessary to the determination of class certification is completed and no further briefing on class certification is necessary. (Doc. No. 197.) The Magistrate Judge has ordered a stay of merits discovery pending resolution of the class certification motion. (Id.)

### INTRODUCTION

In this federal securities fraud action, the Plaintiffs allege that Bancorpsouth, Inc. ("the Bank") and its Chief Executive Officer (James Rollins), its Chief Operating Officer and President

---

[1]

The Court appointed Palm Beach Gardens Firefighters Pension Fund to be Lead Plaintiff in this action on October 22, 2014. (Doc. No. 31.) It found that the Fund, which possesses the largest financial interest in the relief sought by the class, would fairly and adequately represent the interests of the class. 15 U.S.C. § 78u-4(a)(3)(B).

(James Kelley), and its Chief Financial Officer (William Prater) (collectively, "Defendants") made materially false and misleading statements and omissions regarding the Bank's compliance with federal laws and that those statements and omissions violated the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The Amended Complaint (Doc. No. 39) alleges that Defendants made false, misleading statements and omissions regarding (1) the Bank's compliance with critical anti-money laundering and Bank Secrecy Act regulations as well as the Bank's fair lending practices and (2) the closing of two pending mergers/acquisitions. Plaintiffs allege that Defendants knew the Bank was not in compliance with the anti-money laundering and Bank Secrecy Act regulations, and yet they affirmatively stated that (1) they were in compliance with all banking laws and regulations, (2) they expected the two planned mergers to close in the second quarter of 2014, and (3) they expected to receive regulatory approval for those mergers.[2] (Doc. No. 39, ¶¶ 108-155.)

The Fund seeks to bring this action on behalf of all persons who purchased or otherwise acquired the common stock of the Bank from January 8, 2014, through July 21, 2014, and it asks the Court to certify a class of those persons pursuant to Fed. R. Civ. P. 23. Defendants maintain that the Fund has not met the requirements of Rule 23.

---

[2]

On July 10, 2015, this Court dismissed the alleged misrepresentations that were "forward looking" statements concerning the timing and the expected regulatory approvals of the two mergers at issue. (Doc. Nos. 72-73.) Federal securities law includes a "safe harbor" which excuses liability for statements containing projections of revenues, income, earnings or other financial items; statements of plans and objectives of management for future operations; and statements of future economic performance. 15 U.S.C. § 78u-5. The Court dismissed the forward-looking statements concerning what Defendants anticipated and/or expected to happen concerning the two mergers, finding they were protected by the Safe Harbor and were not false or misleading. (Doc. Nos. 72-73.)

In vacating this Court's prior Order certifying a class, the Sixth Circuit stated that this Court (1) did not set forth the standard requiring it to "rigorously analyze" Plaintiffs' claims before certifying the action as a class action, (2) did not address the bulk of Rule 23's requirements in its Order, and (3) did not define the class it certified. (Doc. No. 178.) The Court will address those concerns and further expand on why it is appropriate to grant Plaintiffs' Motion.

The Court adopts its prior Order granting the Motion to Certify the Class (Doc. No. 158) that specifically defines the class as:

> All persons who purchased or otherwise acquired the publicly traded common stock of BancorpSouth, Inc. between February 12, 2014 and July 21, 2014, inclusive, and who were damaged thereby. Excluded from the Class are Defendants, the officers and directors of the Company at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

(Doc. No. 158 at 2.)

CLASS CERTIFICATION

In order to certify a class, the Court must be satisfied that the Fund has met the requirements of both Rule 23(a) and Rule 23(b) of the Federal Rules of Civil Procedure.[3] A class action will be certified only if, after rigorous analysis, the Court is satisfied that the prerequisites of Rule 23(a) have been met and also that the action falls within one of the categories under Rule 23(b). Castillo v. Envoy Corp., 206 F.R.D. 464, 467-68 (M.D. Tenn. 2002). The decision whether to certify a class is committed to the sound, broad discretion of the district judge and turns on the particular facts and circumstances of each individual case. In re Whirlpool Corp. Front-Loading Washers Product Liability Litigation, 722 F.3d 838, 850 (6th Cir. 2013); Ballan v. Upjohn Co., 159 F.R.D. 473, 479

---

[3] As the Sixth Circuit noted, in contesting certification, Defendants challenged only some of Plaintiffs' allegations. (Doc. No. 178 at 3.)

(W.D. Mich. 1994). The party seeking class certification bears the burden of showing that the requirements for class certification are met. <u>Bridging Communities Inc. v. Top Flite Financial Inc.</u>, 843 F.3d 1119, 1124 (6th Cir. 2016).

RULE 23(a)

Rule 23(a) establishes four requirements for class certification: the class is so numerous that joinder of all members is impracticable; there are questions of law or fact common to the class; the claims or defenses of the representative party are typical of those of the class; and the representative party will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

<u>Numerosity</u>

Rule 23 (a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. While there is no strict numerical test, "substantial" numbers usually satisfy the numerosity requirement. <u>In re Polyurethane Foam Antitrust Litigation</u>, 314 F.R.D. 226, 237 (N.D. Ohio 2014) (citing <u>Daffin v. Ford Motor Co.</u>, 458 F.3d 549, 552 (6th Cir. 2006)). Numerosity is generally assumed to have been met in class action suits involving nationally traded securities. <u>In re Direct General Corp. Securities Litigation</u>, 2006 WL 2265472 at * 2 (M.D. Tenn. Aug. 8, 2006); <u>Ross v. Abercrombie & Fitch Co.</u>, 257 F.R.D. 435, 442 (S. D. Ohio 2009).

The Fund has adequately shown that the Bank's common stock is nationally traded, with more than 200 large institutional investors, and that there are most likely thousands of class members. (Doc. No. 98 at 8.) The Court finds that the numerosity requirement has been met in this case and that Defendants do not suggest otherwise. (Doc. No. 115.)

<u>Commonality</u>

Rule 23's second requirement for class certification is that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). To demonstrate commonality, the Fund must show that class members have suffered the same injury. <u>Wal-Mart Stores, Inc. v. Dukes</u>, 131 S.Ct. 2541, 2555 (2011); <u>Whirlpool</u>, 722 F.3d at 851. Their claims must depend upon a common contention of such a nature that it is capable of class-wide resolution, which means that determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke. <u>Id.</u>; <u>Wal-Mart</u>, 131 S.Ct. at 2551.

What matters to class certification is not the raising of common questions, but the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. <u>Wal-Mart</u>, 131 S.Ct. at 2551. The mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible. <u>In re American Medical Systems, Inc.</u>, 75 F.3d 1069, 1080 (6th Cir. 1996); <u>see</u> <u>also</u> <u>Young v. Nationwide Ins. Co.</u>, 693 F.3d 532, 543 (6th Cir. 2012) (presence of questions peculiar to each individual member of the class was no bar when liability arose from a single course of conduct).

The Fund asserts that common questions in this case include: (1) whether Defendants' alleged statements and omissions were materially false or misleading; (2) whether federal law was violated by Defendants' alleged acts; and (3) to what extent class members have sustained damages.

Defendants contest commonality based on the lack of reliance. The Court will address reliance and the Fund's reliance upon the "fraud-on-the-market presumption" in the discussion concerning Rule 23(b)(3) and predominance. <u>See</u> <u>Halliburton Co. v. Erica P. John Fund, Inc.</u>, 134

S.Ct. 2398, 2404 (2014) (elements of the presumption have everything to do with the issue of predominance under Rule 23(b)(3)). In summary, as it relates to commonality, application of the "fraud-on-the-market presumption" allows the Court to presume that class members relied upon the alleged misstatements such that the question of liability is not an individualized issue.

The first two common questions posed by the Fund – whether the alleged misstatements and omissions are materially false or misleading and whether Defendants' alleged acts violated federal law – do arise from a single course of conduct by Defendants. The alleged misstatements and omissions were the same as relates to all potential class members. Determination of their truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke. In re Whirlpool, 722 F.3d at 852. If those misstatements and omissions violated federal law, they violated federal law as to all potential class members. Therefore, answering those questions will generate common, class-wide answers concerning liability. The Court finds that the commonality requirement is satisfied.

Typicality and Adequacy

Rule 23(a)(3) requires the Fund to show that its claims are typical of the claims of the proposed class. A plaintiff's claim is typical if it arises from the same event, practice, or course of conduct that gives rise to the claims of other class members and if its claims are based on the same legal theory. American Medical Systems, 75 F.3d at 1082. The Fund's interests must be aligned with those of the putative class and, in pursuing its own claims, the Fund must also advance the interests of the class members. Id.

Rule 23(a)(4) requires the Court to find that the Fund will fairly and adequately protect the interests of the class. In order to satisfy the requirement of adequacy, the class representative must

be part of the class and possess the same interest and suffer the same injury as the class members. Young, 693 F.3d at 543. In other words, the Fund must have common interests with unnamed members of the class and must be able to rigorously prosecute the interests of the class through qualified counsel.

The Fund has carried its burden of establishing that its claims are the same as those of the class. The Fund and the class both allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act and Rule 10b-5 by making statements that misrepresented or omitted material facts. The claims of the Fund and the class involve the same security (BancorpSouth), the same alleged misstatements and omissions, the same legal theories, and the same evidence. Whether those allegations are true or not will be the same for the Fund as for the proposed class members.

Defendants argue that because the Fund failed to file the mandatory Reform Act Certification with its Amended Complaint (Doc. No. 39), it does not meet the typicality and adequacy requirements of Rule 23(a). Federal law provides that each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certificate with the complaint. 15 U.S.C. § 78u-4(a)(2)(A). The Fund filed a certification with its Motion for Appointment as Lead Plaintiff (Doc. No. 19-2) but not with its Amended Complaint.

A class representative need not file a new certification each time the complaint is amended. Thorpe v. Walter Investment Mgmt. Corp., 2016 WL 4006661 at * 10 (S.D. Fla. March 16, 2016); Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F.Supp.2d 474, 500 (S.D. N.Y. 2004) ("[W]e think such a requirement would be a useless burden"). The Court finds nothing improper about the Fund's certification in this litigation and Defendants have shown no prejudice because of the certification. The certification submitted by the Fund with its earlier motion is sufficient.

Defendants next argue that the Fund cannot adequately represent the class because of its lack of meaningful involvement in and understanding of its "lawyer-driven" litigation. Defendants contend that the Fund did not become a Plaintiff in this case on its own, but rather, Plaintiffs' counsel brought the case to the Fund's attention pursuant to a portfolio monitoring agreement between counsel and the Fund.[2] Defendants point out that some courts have criticized such agreements as raising conflicts of interest.

For example, in <u>Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing and Securitization, LLC</u>, 616 F.Supp 2d 461, 464 (S.D. N.Y. 2009), the court held that the pension fund was in no position adequately to monitor the conduct of the litigation based, in part, on its monitoring agreement with counsel. In that monitoring agreement, the attorneys provided free monitoring of the pension fund's investments in exchange for the pension fund's agreement that, if the attorneys recommended bringing a securities class action, the pension fund would retain those same attorneys, on a contingency fee basis, to represent it in that action. <u>Id</u>. Defendants have not alleged such a provision in this case.[3]

On the other hand, the Fund relies on cases in which the courts have recognized the importance of such monitoring agreements and held that they present no bar to class certification. <u>See</u>, <u>e.g.</u>, <u>Willis v. Big Lots, Inc.</u>, __ F. Supp. 3d __, 2017 WL 1063479 at * 10 (S.D. Ohio March 17, 2017) (fact that plaintiff learned of case through monitoring agreement did not render plaintiff

---

[2]

Under such monitoring agreements, a law firm overlooks the specific fund and recommends to its administrators when the law firm believes a violation of the securities laws has occurred. <u>Plumbers & Pipefitters Nat. Pension Fund v. Burns</u>, 292 F.R.D. 515, 523 (N.D. Ohio 2013).

[3]

The Chairman of the Fund and representative designated by the Fund to testify in deposition, Richard Rhodes, testified that the Fund could have considered other counsel. (Doc. No. 118-3 at 63.)

inadequate to serve as class representative); Plumbers & Pipefitters Nat. Pension Fund v. Burns, 292 F.R.D. 515, 523 (N.D. Ohio 2013) (citing United Food & Commercial Workers Union v. Chesapeake Energy Corp., 281 F.R.D. 641, 655 (W.D. Okla. 2012)).

In Plumbers, the court found that the fund was under no obligation to retain the law firm to pursue its claims identified through the monitoring agreement and, noting that other courts routinely reject attacks on the propriety of portfolio monitoring agreements, held that the monitoring agreement did not create a conflict or render the plaintiff inadequate to represent the class. Plumbers, 292 F.R.D. at 523. The court stated that at least one other court has held that such a monitoring agreement might actually favor adequacy of the counsel retained to monitor a fund because the firm's ongoing relationship with the fund would depend on its performance in the litigation. Id.

Similarly, in United Food, the court concluded that the monitoring agreement did not present a conflict of interest impacting the adequacy of the lead plaintiff's representation. United Food, 281 F.R.D. at 654-655. The court said that some courts have found that monitoring agreements actually illustrate a lead plaintiff's involvement in and awareness of the financial issues involved in the litigation. Id.

The Court finds that the monitoring agreement between the Fund and counsel in this case, which does not require the Fund to hire specific counsel for this purpose, does not render the Fund inadequate to be the class representative in this case. The agreement does not create a conflict of interest, impair the Fund's exercise of independent judgment, and most of all, does not render the Fund substantially different from other members of the class.

Defendants also contend that the Fund has ceded control of this litigation to counsel. According to Defendants, this fact is shown because the Fund's representative, Mr. Rhodes, knew

very little about the litigation. Both Defendants and the Fund cite excerpts from the testimony of Mr. Rhodes to support what he did and did not know about the litigation.[4] The Court has reviewed the deposition of Mr. Rhodes (Doc. No. 118-3) and finds the Fund representative's understanding of the litigation and commitment to it is adequate. It does not preclude the Fund from being Lead Plaintiff in this case.

Mr. Rhodes explained the allegations underlying this litigation and the specific misrepresentations allegedly made – that in connection with buying two banks, BancorpSouth made statements that they were in compliance with all the rules and regulations of banking when they were not. (Doc. No. 118-3 at 67.) He also explained why the Fund was asked to serve as lead plaintiff –  because it was the largest client and had the largest loss. (Id.) As noted above, Mr. Rhodes understood  that the Fund's role was to act as a fiduciary of the class and to maximize the recovery for the class and that the Fund would be required to answer depositions, provide records and hire counsel. (Doc. 118-3 at 71.) This understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery are sufficient to meet the adequacy requirement of Rule 23(a)(4). Plumbers, 292 F.R.D. at 520.

Defendants assert two additional arguments that the Fund is not typical or adequate in this case.  First, Defendants argue that the Fund is represented by outside counsel, the Sugarman firm, which will be able to participate in a share of any class recovery without Court approval. Any

---

4

For example, Defendants point out that Mr. Rhodes testified that the Fund would be required to answer depositions, provide records and hire counsel. (Doc. 118-3 at 71.)  But just before that, he also testified that the Fund's role was to act as a fiduciary of the class and to maximize the recovery for the class. (Id.)

attorneys' fee awards in this matter, however, will be determined by the Court, so they will not be without court approval.

In addition, the Sugarman firm is the Fund's regular outside counsel and represents the Fund, not the class. The Robbins Geller firm represents the class. The fact that both firms may eventually recover their fees out of the same settlement or judgment does not change their ethical or professional duties to their clients and to the proposed class. <u>Plumbers</u>, 292 F.R.D. at 523, n. 11. Furthermore, representation by the outside law firm will ensure that the Fund will fulfill its duty adequately to monitor class counsel. <u>Id</u>. at 523.

Second, Defendants claim that Plaintiffs' case depends in significant part on the testimony of a third party, David Michael Stamm, who was the Senior Vice-President Portfolio Manager of Dana Investment Advisors, the Fund's outside investment manager. Defendants contend that Mr. Stamm has a view of the facts that clashes with important allegations of the Amended Complaint.[5] If that is true, then Defendants will be able to challenge that testimony at trial, but it does not show that the Fund is not adequate or typical to represent the class. Defendants have not shown that statements of Mr. Stamm are binding on the Fund.

For all these reasons, the Court finds that the Fund has shown sufficient typicality and adequacy and meets the requirements of Fed. R. Civ. P. 23(a).

---

[5] Mr. Stamm testified that the corrective disclosures in this case did not correct any "misunderstanding" he had about BancorpSouth. (Doc. No. 116 at 122.) The Amended Complaint alleges that the corrective disclosures "shocked investors." (Doc. No. 39 at 34.)

Rule 23(b)

As indicated above, if a plaintiff satisfies the requirements of Rule 23(a), then the Court looks to whether the proposed class action falls into any of the categories under Rule 23(b). Plaintiffs claim that their action satisfies the requirements of Rule 23(b)(3). Under that subsection, Plaintiffs must show that common questions of law or fact predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

Plaintiffs assert that, as with their arguments concerning commonality, common questions of law and fact predominate in this case and the claims of all class members will be proved by the same evidence. To recover damages for securities violations, the Fund must prove (1) a material misleading statement or omission by Defendants, (2) scienter, (3) a connection between the misrepresentation or omission and the purchase or sale of a security, (4) reliance upon the misrepresentation or omission, (5) economic loss, and (6) loss causation. Halliburton, 134 S.Ct. at 2407. Class members will be required to prove the same elements.

Defendants argue that Plaintiffs cannot show that common issues of fact or law predominate over individual issues here because there are individual issues concerning reliance. In order to recover damages in a private securities action such as this one, Plaintiffs must prove that they relied on Defendants' misrepresentations. Halliburton, 134 S.Ct. at 2405. Defendants argue that Plaintiffs' reliance is a predominant, but not common, issue in this case because each Plaintiff's reliance or lack thereof is an individual issue. Plaintiffs contend that, with regard to the alleged misrepresentations, they can show reliance by means of the fraud-on-the-market presumption.

Fraud-On-The-Market Presumption

The Supreme Court has found that investors may satisfy the reliance requirement by invoking a presumption known as the "fraud-on-the-market presumption." Halliburton, 134 S.Ct. at 2411-15; Basic Inc. v. Levinson, 108 S.Ct. 978, 989-90 (1988). Without the presumption of reliance, a Rule 10b-5 suit cannot proceed as a class action because each plaintiff would have to prove reliance individually, so common issues would never predominate over individual ones as required by Rule 23(b)(3). Halliburton at 2416.

The fraud-on-the-market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business. Basic, 108 S.Ct. at 989; Wilkof v. Caraco Pharmaceutical Laboratories, Ltd., 280 F.R.D. 332, 342 (E.D. Mich. 2012). Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements because the market price of the stock was adversely affected by the misrepresentation. Id.

To demonstrate that the fraud-on-the-market presumption of reliance applies, a plaintiff must show that (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between the time the misrepresentations were made and when the truth was revealed.[6] Halliburton, 134 S.Ct. at 2408. The theory is based on the premise that certain well-developed markets are efficient processors of public information. Amgen Inc. v. Conn. Retirement Plans and Trust Funds, 133 S.Ct. 1184, 1192 (2013). If a market is generally efficient in incorporating publicly available information into a security's

_____

[6]

Plaintiffs have in fact alleged that they and the proposed class members traded the stock between the time the misrepresentations were made and the time when the truth was revealed. (Doc. No. 39 at 60.) The Defendants do not dispute that allegation.

13

market price, it is reasonable to presume that a particular public, material misrepresentation will be reflected in the security's price. Id.

The presumption can be rebutted by appropriate evidence, such as proof that news of the truth entered the market and dissipated the effects of the prior misstatements. Amgen, 133 S.Ct. at1193 and 1204. Any showing that severs the link between the alleged misrepresentation and either the price received or paid by the plaintiff or his decision to trade at a fair market price will be sufficient to rebut the presumption. Halliburton,134 S.Ct. at 2408. For example, evidence that a plaintiff knew the company's statements were false but sold his shares nevertheless could rebut the presumption of reliance. Basic, 485 U.S. at 248.

a) Publicly Known

Defendants argue that Plaintiffs cannot show that the misrepresentations at issue were publicly known.[7] If the misrepresentation was not publicly known, then it could not have distorted the stock's market price. Halliburton, 134 S.Ct. at 2413. Defendants assert that showing the alleged misrepresentations are in the public domain falls short of proof that they are "publicly known" as required for the presumption to apply. Defendants contend that the Fund must at least demonstrate that a critical mass of analysts, market makers or other market actors knew of the alleged misrepresentations and wrote about them or took some other action that would tend to affect the stock price. (Doc. No. 115 at 2.) Requiring Plaintiffs to show that certain people read and relied on

---

[7]

A market may more readily process certain forms of widely disseminated and easily digestible information, such as public merger announcements, than information more difficult to acquire and understand, such as obscure technical data buried in a filing with the SEC. Amgen, 133 S.Ct. at 1197, n. 6. The information in the merger agreements here, however, was not obscure technical data or buried. It was information filed publicly with the SEC in which BancorpSouth represented that it was in compliance with all applicable laws, statutes, and regulations.

the alleged misrepresentations, however, would circumvent the presumption by requiring Plaintiffs to show reliance.

The misrepresentations at issue herein were found in Registration Statements, Proxy Statements, and Merger Agreements, public documents that were filed with the Securities and Exchange Commission ("SEC"). For example, the Bank's February 28, 2014 Registration Statement included, as Annex A, an Agreement and Plan of Reorganization in which BancorpSouth allegedly misrepresented that it was in compliance with all applicable laws, statutes, and regulations. (Doc. No. 39 at ¶ 127.)

Other courts have summarily recognized that SEC filings are sufficiently public to be "publicly known." See, e.g., In re Neustar, Inc. Securities Litigation, 2015 WL 5674798 at * 7 (E.D. Va. Sept. 23, 2015) and In re Red Hat, Inc. Securities Litigation, 261 F.R.D. 83, 91 (E.D. N.C. 2009). The Court agrees with these cases and finds that the merger agreements filed with the SEC in this case are sufficiently public to satisfy the Fund's obligation under the first element of the presumption for purposes of class certification.

### b) Materiality

Even though materiality is an element for invoking the fraud-on-the-market presumption, the Supreme Court has held that it should be left to the merits stage of the litigation because it does not bear on the predominance requirement of Rule 23(b)(3). Halliburton at 2416. In Amgen, the Court stated that proof of materiality is not a prerequisite to class certification, noting that materiality is a common question and the class will either prevail or fall in unison as to that issue. Amgen, 133 S.Ct. at 1191.[8] Thus, the Court need not address materiality on this motion.[9]

---

[8]

Similarly, the Supreme Court has held that loss causation need not be proved at the class

c) Efficient Market

As noted above, the fraud-on-the-market theory rests on the premise that certain well-developed markets are efficient processors of public information. <u>Amgen</u>, 133 S.Ct. at 1192. In such markets, the market price of shares will reflect all publicly available information. <u>Id.</u> Here, the Fund asserts that because the stock was widely traded on the New York Stock Exchange ("NYSE"), the market is efficient. Defendants contend that the Fund has not carried its burden to prove an efficient market, relying upon price impact arguments and challenging the findings of the Fund's expert as inadequate.

A district court may consider five factors[10] in determining whether a security was traded on an efficient market: (1) a large weekly trading volume; (2) the existence of a significant number of reports by securities analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 Registration Statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases. <u>Freeman v. Laventhol & Horwath</u>, 915 F.2d 193, 197-98 (6th Cir. 1990); <u>Bovee v. Coopers & Lybrand</u>, 216 F.R.D. 596, 605 (S.D. Ohio 2003). Defendants have not challenged or argued these

certification stage. <u>Amgen</u>, 133 S.Ct. at 1200 (citing <u>Halliburton</u>, 131 S.Ct. at 2184).

[9]

Defendants acknowledge that the materiality showing need not be made prior to class certification. (Doc. No. 115 at 15.)

[10]

Rather than apply these factors as a checklist, they are to be used as analytic tools by the court to assist in its market efficiency determination. <u>In re Accredo Health, Inc. Securities Litigation</u>, 2006 WL 1716910 at * 10 (W.D. Tenn. April 10, 2006). Here, as in <u>Accredo</u>, the stock was traded in a national security market that is widely regarded as efficient.

factors but instead rely on their price impact arguments to try to rebut the Plaintiffs' assertion of an efficient market. (Doc. No. 115 at 16-24.)

The Court finds that shares of the Bank's stock traded in an efficient market because they were traded on the NYSE. Certain markets, such as the NYSE, are well-suited for application of the fraud-on-the-market theory because "[a] well-developed and impersonal market, such as the New York or Pacific stock exchanges, will instantaneously incorporate all publicly available information about a given security into the market price of that security." Bovee, 216 F.R.D. at 606. Because the Bank's stock was traded on the NYSE during the class period (Doc. No. 39 at 9), the Court is satisfied that the Fund has established, for purposes of class certification, that the stock traded in an efficient market.

### d) Rebuttal - Price Impact

Defendants argue that they have rebutted Plaintiffs' allegations of an efficient market by showing that the alleged misrepresentations had no price impact. Plaintiffs are not required to present direct evidence to prove price impact in order to rely on the fraud-on-the-market presumption. Sterling Heights General Employees' Retirement Sys. v. Prudential Financial, Inc., 2015 WL 5097883 at * 12 (D. N.J. Aug. 31, 2015) (citing Halliburton, 134 S.Ct. at 2414). They can establish entitlement to the presumption through evidence of publicity and market efficiency, an indirect way of showing price impact. Sterling Heights at * 12; Halliburton, 134 S.Ct. at 2415.

Before Halliburton, courts around the country held that the presumption of reliance could be rebutted *at trial*. See, e.g., In re Accredo Health, Inc. at *11 (presumed reliance can be rebutted at trial); In re Polymedica, 432 F.3d at 17 (at the class certification stage, court will not address whether defendants can rebut the presumption of reliance). In Halliburton, however, the Court held

that defendants must be afforded an opportunity before class certification to demonstrate that an alleged misrepresentation did not actually affect the market price of the stock.[11] Willis at * 15. Price impact is the consideration of whether the alleged misrepresentations affected the market price. Id. at *16. The burden to prove lack of price impact by a preponderance of the evidence rests on the defendant in order to rebut the fraud-on-the-market presumption at this stage. Id. at 16; In re Goldman Sachs Group, Inc. Securities Litigation, 2015 WL 5613150 at * 4 and n. 3 (S.D. N.Y. Sept. 24, 2015).

Price impact is demonstrated by plaintiffs through either evidence that a stock's price rose in a statistically significant manner after a misrepresentation or evidence that the stock's price declined in a statistically significant manner after a corrective disclosure. Willis at 16. Defendants argue that the alleged misstatements in this case did not affect the stock price at the time those statements were made. They assert that this alone sufficiently demonstrates the absence of price impact. (Doc. No. 115 at 17.) To successfully rebut the fraud-on-the-market presumption, however, a defendant cannot simply show that a price did not rise after a misrepresentation. Willis at 16.

As explained in Halliburton, price impact (not *lack* of price impact) can be shown by the plaintiffs through evidence that the price was affected either at the time of the misrepresentation *or* at the time after a corrective disclosure. Willis at 16 (citing Halliburton at 2414). Analysis of the price impact usually focuses on stock price movement at the time the truth is disclosed. Goldman Sachs at * 6. "So the fact that there was no stock price increase when the statements were made does not suggest a lack of price impact." Id. In other words, in order to rebut the presumption for class

---

[11]

Halliburton held that the defendants may seek to defeat the presumption at the class certification stage through direct as well as indirect price impact evidence. Halliburton, 134 S.Ct. at 2417.

certification purposes, Defendants must show that the misrepresentation did not in fact affect the stock price; but "affecting the stock price" can occur at the time the misrepresentation is made or at the time the corrective disclosure is given. <u>Willis</u> at * 15.

The Fund contends that the price impact occurred at the time the corrective disclosure was made. The Amended Complaint alleges that when Defendants' "corrective disclosure" was made in July of 2014, the price of BancorpSouth stock tumbled more than 8% the first day and another 1.72% the second day. (Doc. No. 39 at ¶ 93.) Defendants have not rebutted this change in the stock prices at the time of disclosure.

Defendants assert that any decline in stock price after the corrective disclosure likely reflects other factors besides the corrective disclosure. Whether Defendants are correct, however, involves merits issues as to causation. The case cited by Defendants, <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 125 S.Ct. 1627 (2005), dealt with a motion to dismiss, not a motion for class certification, and the Court was analyzing loss causation, not price impact. Loss causation is not price impact. <u>Erica P. John Fund, Inc. v. Halliburton Co.</u>, 131 S.Ct. 2179, 2187 (2011). Price impact simply refers to the effect of a misrepresentation on a stock price. <u>Id</u>.

For all these reasons, the Court finds that Defendants have not rebutted the fraud-on-the-market presumption for purposes of this Motion, and Plaintiffs are entitled to rely on that presumption.

Affiliated Ute Presumption

Plaintiffs also contend that, with regard to the Defendants' failures to disclose (as opposed to misrepresentations), they are entitled to the "Affiliated Ute Presumption." In Affiliated Ute Citizens of Utah v. United States, 92 S.Ct. 1456 (1972), the Supreme Court held that in securities actions involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery. Id. at 1473. "All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of this decision." Id. More recently, the Supreme Court stated that if there is an omission of a material fact by one with a duty to disclose, the investor to whom the duty was owed need not provide specific proof of reliance. Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc., 128 S.Ct. 761, 769 (2008).

Defendants argue that Plaintiffs have admitted this case does not involve omissions. The sentence from Plaintiffs' Memorandum in Support of Motion to Dismiss (Doc. No. 64 at 21) that Defendants quote, however, is not such an admission: "Nowhere does Plaintiff allege that Defendants had a stand-alone duty to disclose the existence of [an FDIC investigation]." In context, that sentence begins an explanation of how Defendants, having chosen to speak, had a duty — not an independent, stand-alone duty, but a duty brought about by their choosing to speak — to disclose certain information. (Doc. No. 64 at 21.) Indeed, Plaintiffs allege situations where Defendants' failure to disclose certain information is what makes the alleged misrepresentations misleading or false.

Plaintiffs have alleged both omissions and misrepresentations.[12] (Doc. No. 39.) Where plaintiffs' claims are based on a combination of omissions and misstatements, courts have acknowledged the applicability of the Affiliated Ute presumption as to the element of reliance with regard to alleged omissions. Dodona I, LLC v. Goldman, Sachs & Co., 296 F.R.D. 261, 270 (S.D. N.Y. 2014). The Court finds that, for purposes of class certification, the Fund is entitled to the Affiliated Ute presumption as to its failure to disclose claims.

Individualized Issues

Finally, Defendants maintain that individual issues concerning reliance and damages remain. Under the fraud-on-the-market and Affiliated Ute presumptions, for purposes of class certification, reliance will be presumed. Similarly, Defendants' argument concerning damages as an individualized issue will be addressed at trial. As noted above, the presence of questions peculiar to each individual member of the class is no bar when liability arose from a single course of conduct. Young, 693 F.3d at 543. There is a "battle of the experts" with regard to damages, and it is unnecessary for the Court to rule on that battle at this time because this is a motion for class certification. If, after class certification, Plaintiffs cannot show that damages are capable of measurement on a class-wide basis, the Court may bifurcate the issues of liability and damages or Defendants may move to decertify the class.

CONCLUSION

For all these reasons, the Court finds that the Fund's Motion to Certify the Class (Doc. No. 97) should be **GRANTED**.

---

[12]

The Affiliated Ute Presumption applies to cases involving primarily a failure to disclose, which is not the same as *exclusively* a failure to disclose. Dodona I, 296 F.R.D. at 269.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE